**UNITED STATES BANKRUPTCY COURT
DISTRICT OF CONNECTICUT
HARTFORD DIVISION**

| | | | |
|---|---|---|---|
| IN RE: | ) | Case No. | 20-20882 (JJT) |
| | ) | | |
| JOANNA LAISCELL | ) | Chapter | 13 |
| | ) | | |
| Debtor. | ) | Re: ECF No. | 89 |
| | ) | | |

## MEMORANDUM OF DECISION AND ORDER DISMISSING CHAPTER 13 CASE

### I.    INTRODUCTION

This matter is before the Court upon its Order to Show Cause dated May 3, 2023 (ECF No. 89, the "Show Cause Order) and after a hearing held on July 17, 2023 (ECF No. 117, the Show Cause Hearing).

The Bankruptcy Code serves a practical but noble purpose: "to grant a fresh start to the honest but unfortunate debtor." *Marrama v. Citizens Bank of Mass.*, 549 U.S. 365, 367 (2007) (citations omitted) (internal quotation marks omitted). In exchange for that fresh start, however, bankruptcy courts expect that debtors will tell the truth — to their creditors, to their trustees, and to the courts. When faced with willful deceit, courts can and must discipline dishonest debtors by taking appropriate measures, including dismissal, to protect the integrity of the bankruptcy system. *Id.* at 373–74. Unfortunately, this is such a case.

For approximately three years, the Debtor, JoAnna Laiscell, concealed the existence of a material asset belonging to the bankruptcy estate, namely, a civil lawsuit that could provide a substantial pecuniary recovery should the Debtor succeed in that proceeding. The Debtor concealed the existence of this civil suit from the inception of her bankruptcy case, having failed to disclose her underlying claim and her civil suit to the Court through her bankruptcy petition schedules as well as multiple hearings on at least three iterations of her Chapter 13 plans of

reorganization.  The Debtor's affirmations (under penalty of perjury) in her schedules and at her Section 341 meeting deceived the Chapter 13 Trustee (the "Trustee") in this bankruptcy case as to the existence of any such claims.  She even concealed the existence of her civil suit from her bankruptcy counsel, who in turn was only alerted by this Court to its existence nearly three years after its filing.  In light of her apparent material nondisclosures, recklessness, bad faith, and brazen deceit, the Court must dismiss the Debtor's bankruptcy case.

## II.   JURISDICTION

The Court has jurisdiction over these proceedings pursuant to 28 U.S.C. §§ 157(b) and 1334(b) and the United States District Court for the District of Connecticut's General Order of Reference dated September 21, 1984.  This is a core proceeding pursuant to 28 U.S.C. § 157(b)(2)(A) (case administration).

## III.   RELEVANT BACKGROUND AND PROCEDURAL HISTORY

On July 1, 2020, the Debtor filed a petition for relief under Chapter 13 of the Bankruptcy Code.  ECF No. 1.  From the outset of her bankruptcy case, the Debtor has been represented by experienced bankruptcy counsel.  The Court approved the Debtor's Chapter 13 plan of reorganization (after previous iterations were rejected) on July 23, 2020.  ECF No. 62.  By all accounts, the Debtor was fulfilling her obligations under that confirmed plan through 2022, without issue.  On January 6, 2023, the Debtor filed a motion to modify her confirmed plan, ostensibly to reflect her ongoing difficulties in securing employment (ECF No. 65 the "Modification Motion") because she had allegedly been "blacklisted."  The Court held a hearing and, after learning of her employment difficulties, approved the Modification Motion on March 16, 2023.  ECF No. 74.  Shortly after that hearing, however, the Court was alerted by an article in the Hartford Courant to the circumstances surrounding the Debtor's termination by her former employer, the Hartford Public Schools ("HPS").  Specifically, the Debtor, a former executive

director of financial management for HPS, was terminated after an internal investigation led to purported findings that she had defrauded her employer's health insurance plan, allegations she to date strongly denies.  Initially, the Court's concerns in this case focused on the absence of due notice to the City of Hartford regarding the Debtor's bankruptcy case and Chapter 13 plan, as well as her failure to schedule a potential or disputed claim by the City of Hartford related to her alleged fraud.

Subsequent judicial notice and review of the federal docket further informed the Court of the Debtor's undisclosed ongoing pursuit, in the United States District Court for the District of Connecticut (the "District Court"), of an employment discrimination action against the Hartford Board of Education ("HBOE"), filed on September 26, 2020, seeking damages in response to her termination from HPS (the "Civil Action").[1]  Additional review of the Civil Action further alerted the Court to the fact that, on August 24, 2018, the Debtor had previously filed an administrative action (the "Administrative Action") with the Connecticut Commission on Human Rights and Opportunities ("CHRO") against the HBOE in response to her termination, in which she pursued administrative and monetary remedies (including damages).  The Debtor was represented by counsel during the Administrative Action.

Due to these material and recurrent nondisclosures, the Court issued an order to show cause as to why confirmation of the Debtor's modified plan should not be revoked.  ECF No. 81. The Court held a hearing on that show cause order on April 6, 2023 (ECF No. 84), and pursuant to the Debtor's statements and acknowledgments on the record revoked confirmation of the Debtor's modified plan the following day (ECF No. 86).  Given the Debtor's material nondisclosures, the Court became concerned that her bankruptcy case might also have been filed

---

[1] *See* Docket No. Docket No. 3:20-cv-01463-VLB.

in bad faith and consequently issued its Show Cause Order as to why the Debtor's bankruptcy case should accordingly be dismissed.  ECF No. 89.  The Court held the Show Cause Hearing, during which the Debtor essentially stated (despite her advanced education with an M.B.A. and explicit questioning by her counsel and the Trustee about pending or potential claims) that she did not appreciate the substance of those inquiries and was merely looking for vindication of her name and reputation in the pursuit of legal remedies.  She feigned, in the Court's estimation, that she was unaware that she had sought significant damages in both her Administrative Action and her Civil Action.  The Court then took the matter under advisement.

## IV.    STANDARD OF REVIEW

It is well-established that "[t]he determination of whether a debtor filed a petition or plan in bad faith so as to justify dismissal for cause is left to the sound discretion of the bankruptcy court."  *In re Carcia*, 578 B.R. 495, 500 (Bankr. D. Conn. 2017).  In making that determination, courts are to consider the totality of the circumstances surrounding the relevant bankruptcy petition.  *Id.* at 499–500.  "The totality of the circumstances should take into consideration whether the debtor has abused the provision, purpose or spirit of the Bankruptcy Code and whether the filing is fundamentally fair to creditors."  *Id.* at 500 (internal quotation marks omitted) (quoting *In re Armstrong*, 409 B.R. 629, 634 (Bankr. E.D.N.Y. 2009)).

## V.    DISCUSSION

The record of this bankruptcy case, specifically the revelations of the Debtor's pursuit of damages against HBOE, more than supports a finding that the Debtor has abused the provision, purpose, and spirit of the Bankruptcy Code such that dismissal is clearly warranted.  The Debtor's Civil Action constituted prepetition property of the estate pursuant to 11 U.S.C. § 541, unless properly exempted.  The Debtor filed her bankruptcy petition on July 1, 2020; however, just three weeks later on July 21, 2020, the Debtor received a letter from CHRO, through which

the Debtor was pursuing her Administrative Action.  During the Show Cause Hearing, the Debtor, under oath, testified before this Court that she was either blithely unaware of her damage claims or did not knowingly pursue such claims, despite being represented by counsel in her Administrative Action and her strong sentiments as to the gravity and effect of her alleged wrongful termination.

In that letter, CHRO dismissed the Debtor's Administrative Action because she was "pursuing [her] claims in another forum" (ECF No. 121): namely, the District Court (though the Civil Action was not formally filed until September 26, 2020).  This sequence of events, coupled with her representation by counsel in the Administrative Action, indicate that the Debtor was indisputably (at a minimum) *contemplating* filing her Civil Action against HBOE at the time she filed her bankruptcy petition.  As such, the Debtor should have disclosed her Civil Action claim to her bankruptcy counsel, to the Trustee, and to this Court as a material asset to be administered in her bankruptcy case for the benefit of her creditors.

Even if the Debtor was not contemplating her Civil Action when she filed her bankruptcy petition on July 1, 2020 (a possibility the Court rejects), CHRO's dismissal letter indicates that she was contemplating her claim against HBOE by July 26, 2020 at the latest.  At the Show Cause Hearing, the Debtor and her bankruptcy counsel affirmed that, while the latter had screened the Debtor's disclosures in prepetition due diligence with a generalized (but adequate) question about pending or contemplated litigation claims, the Debtor denied the existence of any such claims, notwithstanding the indelible and adverse effect of her termination from HPS on her financial security and career as a financial executive.

Subsequent to her bankruptcy filing, on August 11, 2020, the Debtor and her bankruptcy counsel met with the Trustee pursuant to 11 U.S.C. § 341 (the "Section 341 Meeting"), where

they examined the Debtor's financial status and affairs.  Transcripts of the Section 341 Meeting reveal that when queried as to whether or not she was pursuing or considering pursuing any legal or equitable actions against any third party, the Debtor, under oath, once again unequivocally answered in the negative, this time to three particularized questions intended to capture pending or contemplated litigation claims by the Debtor.  Her negative statements in response were patently false, and her alleged lack of cognizance of the significance of such disclosures is simply not credible.

As a Chapter 13 debtor, pursuant to 11 U.S.C. §§ 541(a)(1) and 1306(a)(1) the Debtor herself has an initial and continuing obligation to disclose claims against third parties that arise both pre and postpetition.  Throughout her bankruptcy case, the Debtor not once disclosed to her bankruptcy counsel, to the Trustee, or to the Court that she had filed her Civil Action against HBOE.  It was only upon the Court's research that her Civil Action and her Administrative Action came to light.  The Debtor never disclosed any pending, putative, or contemplated claims against HBOE to her bankruptcy counsel even after she filed her Civil Action (with the representation of other legal counsel) in the District Court.  Moreover, the Debtor never once updated her bankruptcy schedules to reflect her Civil Action, nor did she ever disclose her Civil Action in numerous iterations of her Chapter 13 plans of reorganization (at least three) and in hearings before the Court, until after the Court's discovery.  The Debtor irrefutably concealed the existence of her Civil Action throughout her bankruptcy case and did so by making false statements to the Trustee during the Section 341 Meeting and to the Court via her deficient bankruptcy petition, schedules, and plans.  The Debtor's conduct was undeniably either in reckless disregard of her statutory obligations or intentional and/or calculated to conceal resources a Chapter 13 plan of reorganization might otherwise capture.

## VI.    CONCLUSION

Based on the foregoing, the Court is satisfied that the totality of circumstances, namely the Debtor's disregard, obfuscation, and deception throughout her bankruptcy case, constitute good and sufficient cause to find that the present bankruptcy case was filed in bad faith and that allowing its continuation would offend both the spirit of the Bankruptcy Code and its fundamental requirements, and would denigrate the due performance of the bankruptcy obligations of the honest debtors who seek its relief.  *See In re Feldman*, 597 B.R. 448, 457 (Bankr. E.D.N.Y 2019) (a bankruptcy petition containing deficiencies or inaccuracies designed to mislead constitutes evidence of bad faith warranting dismissal); *In re Carcia*, 578 B.R. at 500 ("dishonesty of a debtor is an indication of bad faith conduct warranting dismissal.").

Accordingly, this bankruptcy case shall be **DISMISSED** with a one (1) year bar against subsequent bankruptcy filings by the Debtor.  The Clerk of Court shall cause a copy of this Memorandum of Decision to be served, via regular mail upon HBOE (Attn: Superintendent of Schools) and the City of Hartford (Attn: Corporation Counsel).

**IT IS SO ADJUDGED, ORDERED, AND DECREED** at Hartford, Connecticut this 4th day of August 2023.

*James J. Tancredi*
United States Bankruptcy Judge
District of Connecticut